**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GOLDEN LIVING CENTERS-PENNSYLVANIA | : | Case No. _____ |
| | : | |
| Plaintiff. | : | **COMPLAINT AND APPLICATION TO VACATE ARBITRATION AWARD** |
| -v- | : | |
| | : | |
| SERVICE EMPLOYEES INTERNATIONAL UNION HEALTHCARE PENNSYLVANIA | : | |
| | : | |
| Defendant. | : | |

## I. JURISDICTION AND VENUE

1. This action arises under the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 151 et. seq. Jurisdiction over this action to vacate an arbitration award is conferred on this Court by § 301 of the Act, 29 U.S.C. § 185.

2. The arbitration that is the subject of this lawsuit occurred in Pittsburgh, Pennsylvania, within Allegheny County, Pennsylvania.

3. Golden Living Centers-Pennsylvania (hereinafter "Golden Living") is an employer engaged in an industry affecting commerce as defined in the LMRA, 29 U.S.C. §§ 152(2), (6), and (7), and at the time of the events giving rise to this grievance, did business in the Commonwealth of Pennsylvania.

4. Service Employees International Union Healthcare Pennsylvania (hereinafter "the Union") is a labor organization within the meaning of 29 U.S.C. § 152(5) and until January 31, 2017 was the exclusive bargaining representative of certain employees of Golden Living, including employees at the following Pennsylvania facilities: GLC-Monroeville, GLC-Murrysville, GLC-Mt. Lebanon, GLC-Doylestown, GLC-Lancaster, GLC-Rosemont, GLC-

1

Reading, GLC-York Terrace, GLC-East Mountain, GLC-Scranton, GLC-Stroud, GLC-West Shore, GLC-Summit, GLC-Tunkhannock, GLC-Gettysburg, GLC-Blue Ridge Mountain, GLC-Community Blue Ridge, and GLC-Camp Hill.

## II. **FACTS**

5. For over thirty years, the parties regularly entered into collective bargaining agreements covering the terms and conditions of employment for these employees. The most recent agreement became effective April 1, 2016 ("CBA") (attached hereto as Exhibit A).

6. Article 21 of the CBA provided a four-step grievance procedure, culminating in arbitration, for the resolution of disputes between the parties over the meaning and application of any provisions of the Agreement. (Exh. A, pp. 40-41).

7. Article 24.6 of the CBA dealt with the procedure to be followed in the event of a sale of a Golden Living facility. It provided that:

> In the event of a sale of a facility, employees will be paid for any awarded but unused vacation time and fifty percent (50%) of the sick time to a maximum of 40 sick hours. In the event that the sale occurs during the last quarter of a calendar year, the Company will pay fifty percent (50%) of the anticipated vacation award for the next calendar year.

(Exh. A, p. 46).

8. In mid-2016, Golden Living's parent company made the decision to leave the business of operating skilled nursing facilities, and began transferring the operations of its facilities to unrelated third parties.

9. In September 2016, the operations of the first 12 Pennsylvania facilities were transitioned to Guardian Healthcare. Prior to the transition of those operations, the Company and the Union conducted effects bargaining and executed an MOA relating to the transition. The Union admitted during the arbitration that the September 2016 MOA specifically superseded

Article 24.6 of the CBA and provided revised and different benefits relating to vacation and sick pay upon the transition. This MOA provided in relevant part that:

> SEIU Healthcare PA (the Union) and Golden Living (the Company) agree that for the September 30, 2016 transfer of operations of the following facilities to Guardian (or affiliates), that for 24.6 of the Master Contract, the Company will credit the new operator(s) with any awarded but unused vacation time and full sick time balances for each employee.
>
> The above consideration to credit full remaining sick balances is made with the understanding that the Union waives any future claim regarding paying fifty percent (50%) of the anticipated vacation award for the next calendar year as specified in 24.6 of the Master Contract.
>
> GLC-Waynesburg, GLC-Western Reserve, GLC-William Penn, GLC-Oil City, GLC-HAIDA, GLC Kinzua, GLC-Richland, GLC-Meyersdale, GLC-Uniontown, GLC-Clarion, GLC-Titusville, and GLC-Walnut Creek.
>
> The Union agrees to waive claims that the vacation or sick should have been paid out directly to employees.
>
> The Union does not waive the right to request further effects bargaining.

(Exh. B, September Memorandum of Agreement)

      10.    In December 2016, the parties again entered into effects bargaining that culminated in the execution of three Memoranda of Agreements ("MOAs") on December 19, 2016 to account for employee vacation and sick pay upon the transfer of operations from Golden Living to the new Pennsylvania operators. The transfers of the facilities at issue in this arbitration were originally planned to take place on December 31, 2016. (Exh. C, December Memoranda of Agreements.)

11. The MOAs modified Article 24.6 of the CBA by providing more vacation and sick benefits than employees would have been entitled to under the CBA and provided for a different method of payout. Specifically, the MOAs provided in relevant part that

> SEIU Healthcare PA (the Union) and Golden Living (the Company) agree for the December 31 transfer of operations of the following facilities to [New Operator] (or affiliates) and for 24.6 of the Master Contract, that the Company will credit the new operator(s) with 50% of represented employees' sick pay balances up to 40 hours, unused 2016 vacation balances, and 50% of estimated January 1, 2017 vacation awards: [Covered Facilities].

12. Due to a delay in the State's ability to approve the transaction, the transfer of the operations did not take place until January 31, 2017. Because of the delay, the Union asserted to Golden Living that the December 19 MOAs were invalid and that, rather than providing a 50% credit to the new operators, the company was instead obligated to pay out 100 percent of employees' 2017 vacation pay according to Article 24.6 despite the fact that Article 24.6 had been superseded by the December 19, 2016 MOAs.

13. Golden Living rejected the Union's assertion because the parties had engaged in effects bargaining and had agreed to MOAs that superseded Article 24.6 and that governed the vacation and sick time payouts upon transitions of the operations.

14. The Union did not file a grievance related to the payout of sick pay under the MOAs.

15. The Union filed a grievance claiming the full 2017 vacation payout under Article 24.6, which grievance was denied by the Company and the grievance proceeded to arbitration.

16. On July 25 and August 11, 2017, Arbitrator Matthew Franckiewicz, having been duly selected by the parties, conducted a hearing at which both parties were represented by counsel.

17.     At the hearing, the Union admitted that the Union and Company regularly entered into MOAs that modified the terms of the collective bargaining agreement, including a similar MOA dated September 30, 2016.

18.     The Union further explicitly admitted at the hearing that the September 2016 MOA superseded Article 24.6 of the CBA.

19.     On December 3, 2017, Arbitrator Matthew Franckiewicz issued an Opinion and Award based upon the Union's grievance. A copy of the Opinion and Award is attached to and incorporated by reference in this Complaint as Exhibit D.

20.     Arbitrator Franckiewicz erroneously found that the MOAs did not modify or amend the CBA but rather simply applied Article 24.6 of the CBA.

### III.     THE ARBITRATION AWARD DOES NOT DRAW ITS ESSENCE FROM THE COLLECTIVE BARGAINING AGREEMENT

21.     Plaintiff incorporates paragraphs 1-20 as if fully set forth herein.

22.     The Arbitrator's Award is fatally flawed and does not drawn its essence from the parties' express agreement reached during effects bargaining as set forth in the December 19, 2016 MOAs.

23.     Despite the clear language in the MOAs modifying the terms of the CBA, the Arbitrator completely ignored the MOAs and instead applied the terms of Article 24.6 of the Agreement despite the fact that Article 24.6 had been superseded by the MOAs and thus no longer existed or had any application.

24.     The Arbitrator ignored the fact that under the MOAs the employees received more vacation pay than what they were entitled to under the CBA.  The Arbitrator also disregarded the clear language in the MOAs that by entering into the MOAs, the Union expressly waived any right to additional vacation or sick.

25. An award fails to draw its essence from an agreement when it contradicts the express terms of the agreement.

26. The effect of the Arbitrator's Award is to add terms to the MOAs that did not previously exist, which is neither permitted nor consistent with longstanding principles of contractual interpretation.

27. The Arbitration Award is contrary to and ignores the terms of the MOAs which were agreed to by the parties as a result of effects bargaining.  As a result, the award exceeds the authority of the Arbitrator,  fails to draw its essence from the CBA, and changes, modifies, adds to and/or subtracts from the provisions of the MOAs.  The Arbitration award must therefore be vacated.

WHEREFORE, for the reasons set forth herein, the Award of Arbitrator Matthew Franckiewicz should be vacated.

Respectfully submitted,

Dated:  December 29, 2017          /s/ Charles M. Roesch
                                   Charles M. Roesch, Esq.
                                   DINSMORE & SHOHL LLP
                                   255 East Fifth Street, Suite 1900
                                   Cincinnati, Ohio 45202
                                   Phone: (513) 977-8200
                                   Fax: (513) 977-8141
                                   Email: chuck.roesch@dinsmore.com

                                   *Attorney for Golden Living Centers-Pennsylvania*

11972890v1